

## LIETUVOS RESPUBLIKOS GENERALINĖ PROKURATŪRA
## PROSECUTOR GENERAL'S OFFICE OF THE REPUBLIC OF LITHUANIA

Ms. Mary Ellen Warlow,
Director
Office of International Affairs
U.S. Department of Justice

30 May 2005
Our ref. No.: 14.2-2243 (14.5.-204)
/Please quote when responding/

RE: REQUEST FOR LEGAL ASSISTANCE IN CRIMINAL CASE NO. 10-1-02646-04

Dear Ms. Mary Ellen Warlow,

The Prosecutor General's Office of the Republic of Lithuania pays its compliments to your office and, following the Treaty on Mutual Legal Assistance in Criminal Matters Between the Government of the United States of America and the Government of the Republic of Lithuania, requests for legal assistance in the following matter.

Please find enclosed a Letter Rogatory from the Economic Crime Investigation Division of Crime Investigation Service of Criminal Police of Vilnius City Chief Police Commissariat of the Republic of Lithuania in the criminal case No. 10-1-02646-04, and we kindly ask you to commission the competent law enforcement officers to execute the indicated actions.

If your country's legislation does not forbid it, before interviewing a witness please explain to the witness his duty to tell everything what he knows about the case in a true way; also, that he will have to approve his testimony by signature.

We guarantee that all evidence collected in the United States of America will be used exclusively for the purposes of the investigation of the criminal case and its judicial proceedings.

We hope that our Request for Legal Assistance will be executed and express our deep gratitude for co-operation in advance. We are ready to provide you with analogous or other legal assistance.

We kindly ask you to forward your answer and collected information to the District Prosecutor's Office of Vilnius City, at the address: 7 Rinktinės Str., LT-2600 Vilnius, the Republic of Lithuania, and inform the Prosecutor General's Office of the Republic of Lithuania about the execution of this request (please quote our reference number and the date of this request in your response).

ENCLOSURES: 10 pages.

Yours sincerely,

Deputy Prosecutor General                                                Ms. Vaida Urmonaitė

By: Ms. R. Požarskienė, prosecutor, tel. No.: +370 5 266 23 54

Translated from Lithuanian by Ms. Rūta Žižytė, a translator of the Prosecutor General's Office of the Republic of Lithuania, who has been warned about the criminal liability for making a false or deliberately misleading translation.



## ECONOMIC CRIME INVESTIGATION SECTION OF
## CRIME INVESTIGATION SERVICE OF
## CRIMINAL POLICE OF
## VILNIUS CITY CHIEF POLICE COMMISSARIAT

**LEGAL ASSISTANCE ASSIGNMENT**
in criminal case No. 10-1-02646-04
to the law enforcement institutions of the
United States of America

Economic Crime Investigation Section of Crime Investigation Service of Criminal Police of Vilnius City Chief Police Commissariat currently conducts a pre-trial investigation in criminal case No. 10-1-02646-04, instituted on the basis of a crime defined under Article 214 of the Criminal Code of the Republic of Lithuania, concerning illegal disposition of false non-cash payment instruments, Article 25 paragraph 2 and Article 182 paragraph 1, concerning fraud, when a group of accomplices appropriates somebody else's property.

### Article 25 of the Criminal Code of the Republic of Lithuania.
### FORMS OF COMPLICITY

1. Forms of complicity include a group of accomplices, an organised group or a criminal organisation.
2. A group of accomplices is one, which may be formed by two or more persons at any stage of the commission of a criminal act for the purposes of committing, continuation or completion of the act.
3. An organised group is a combination of two or more persons who at any stage of criminal act conspire to perpetrate several crimes or one serious or grave crime, and while carrying out criminal act every group member performs particular assignment or different role, which is imposed on them.
4. A criminal organisation is a combination of three or more persons in stable relationship with each other and interrelated while distributing roles and assignments, and who are engaged in carrying out joint criminal acts, i.e. serious and grave crimes. An anti-constitutional group or organisation and terrorist group is also considered to constitute a criminal organisation.

### Article 214 of the Criminal Code of the Republic of Lithuania.
### PRODUCTION OR ILLEGAL DISPOSITION OF FALSE NON-CASH PAYMENT INSTRUMENTS

Any person who produces, acquires, keeps or realizes a false or forged payment instrument or uses it to initiate a financial transaction, or produces, acquires, keeps or realizes equipment to forge payment instruments, or seizes or illegally acquires, keeps, realizes or uses somebody else's payment instrument to initiate financial transaction
    shall be punished by a fine or arrest or imprisonment for a term of up to 6 years.

## Article 182 of the Criminal Code of the Republic of Lithuania.
### FRAUD

1. Any person who, by false pretences, for the benefit of oneself or others appropriates the property or interest belonging to another person, evades property burden or abrogates it,
    shall be punished by community work or a fine, or restriction of liberty, or arrest, or imprisonment for a term of up to three years.
2. Any person who, by false pretences, appropriates or gains a right to the property or interest of high value belonging to another person, evades property burden of high value or abrogates it,
    shall be punished by imprisonment for a term of up to eight years.
3. Any person who, by false pretences, appropriates or gains a right to property or interest of low value belonging to another person, evades property burden of low value or abrogates it, commits a misdemeanour, and
    shall be punished by community work, or a fine, or restriction of liberty, or detention.
4. Any person is responsible for the acts, specified in paragraphs 1 and 3 of this Article, in case there is a complaint of a victim or a statement of his legal representative or a demand of a prosecutor.
5. A juridical person is also responsible for the acts, specified in paragraphs 1 and 2.

Olga Jermaliuk, investigator of Economic Crime Investigation Section of Crime Investigation Service of Criminal Police of Vilnius City Chief Police Commissariat, currently conducts a pre-trial investigation in criminal case No. 10-1-02646-04.

On the 20th of December 2004 public company of limited liability (further – AB) "Vilniaus bankas", located at Gedimino Str. 12, Vilnius and AB "Hansabankas", located at Savanorių Str. 19, Vilnius, made declarations that claims from the clients had been received; concerning illegal operations, carried out with the payment cards, issued to them.

On the 27th of December 2004, approximately at 2 p.m. in the shop "Avitelos prekyba", located at Švitrigailos Str. 29/31, Vilnius, suspicions arose that home cinema system "Panasonic SC-HT870", the value of which was 1499 Litas, had been acquired by using a forged payment instrument, that is payment card "Visa" No. 4388 5754 6020 9278. Police officers detained Andrius Lukoševičius, identity number 36211020153, who had passport of the citizen of the Republic of Lithuania No. LK 777202, issued on the name of JURIJ PAVLOV and AB "Vilniaus bankas" payment card "VISA" No. 4388 5754 6020 9278, issued on the name of Jurij Pavlov.

Specialists of Forensic center of Lithuania carried out investigation of AB "Vilniaus bankas" payment card "VISA" No. ▇▇▇▇▇▇▇▇▇▇ issued on the name of ▇▇▇▇▇▇. In the conclusion No. ▇▇▇▇▇▇ of the 21st of January 2005, it was stated that the presented AB "Vilniaus bankas" payment card "VISA" No. ▇▇▇▇▇▇ issued on the name of ▇▇▇▇▇▇ was forged. The card was made of a white colour plastic, on the both sides of which paper slips with printed payment forms of "Vilnius bankas" were affixed. The payment magnetic bar, presented for investigation, included a second track, the data of which was formatted as

payment card and knowing PIN code, were used when taking money at the automatic teller machines.

In the pre-trial investigation case, suspicions were announced to Andrius Lukoševičius, born on the 2nd of November 1962, residing at Kovo 11-osios Str. 37-67, Vilnius, Marius Vadotas, born on the 8th of July 1976, residing at Pajautos str. 11-23, Vilnius and Zigfridas Neniškis, born on the 22nd of March 1969, residing at Žirgo Str. 3-14, Vilnius, on the basis of Article 25 paragraph 2 and Article 182 paragraph 1 of the Criminal Code of the Republic of Lithuania, *to the first two persons and on the basis of Article 214, paragraph 1, of Article 215, paragraph 1 of Article 182 to Zigfridas Neniškis.*

On the 29th of December 2004 Vilnius City 3rd District Court inflicted measures of suppression – arrest upon the suspect Andrius Lukoševičius, which on the 14th of January 2005 was changed to another measures of suppression – written pledge not to leave.

On the 7th of January 2005 Vilnius City 3rd District Court inflicted measures of suppression – arrest upon the suspect Zigfridas Neniškis until the 21st of February 2005.

On the 18th of February 2005 Vilnius City 3rd District Court inflicted measures of suppression – arrest upon the suspect Zigfridas Neniškis until the 21st of March 2005.

On the 15th of March 2005 Vilnius City 3rd District Court inflicted measures of suppression – arrest upon the suspect Zigfridas Neniškis until the 21st of April 2005.

On the 21st of April 2005 Vilnius City 3rd District Court inflicted measures of suppression – home arrest upon the suspect Zigfridas Neniškis.

Lithuanian Criminal Police Bureau International Liaison Office informed that issuer of the payment card No. ▓▓▓▓▓▓▓▓▓▓▓ is bank "Bank One, Delaware, National Association, Credit Signature", address: Bank One, Delaware NA 300 King Street DE1-0050 Wilmington, DE U.S.A 19801. Thus, property damage could have been caused to this bank.

During the pre-trial investigation it is necessary to determine to whom the property damage has been caused and what is the total sum of it, as well as to determine if a civil action will be brought and to get all the documents that prove the caused property damage.

Following Article 66 of the Criminal Procedure Code of the Republic of Lithuania and the agreement of 16th January 1998 between the government of the Republic of Lithuania and the United States of America concerning mutual legal assistance in criminal cases, and seeking a thorough and objective investigation of the criminal case, we request to the law enforcement institutions to execute the following investigation actions in the territory of the United States of America:

1. What type of payment card does the number ▓▓▓▓▓▓▓▓▓▓▓ belong to?
2. Who is the owner of the payment card No. ▓▓▓▓▓▓▓▓▓▓▓ *which and whom the said card has issued to* according to the regulations of the bank? Please indicate personal information of the owner.

3. Did the owner of the card inform the bank about the loss of the aforementioned card or about the unsound charge of money from the account? If the answer is yes, please determine when and what operations have been carried out without the knowledge and will of the owner of the card (we would appreciate if you enclosed copies of the documents of your clients appeal to the bank). Does the bank have information about under what circumstances, where and when the card had been lost? Does the bank know when the owner of the card visited Republic of Lithuania during 2004?

4. To interview a person who used the payment card No. ▮▮▮▮▮▮▮ as a witness on the following questions: When did he / she visit Republic of Lithuania during 2004 and in what city did he / she stay? Was he / she in Vilnius city? If he / she was in Vilnius city, did he / she / go to café "Jazz and Rock coffe"? Did he / she pay with a payment card during the visit in Lithuania, including "Jazz and Rock coffe"? What does he / she know about the payments carried out in Lithuania during the period of time from 21st of November 2004 until 27th of December 2004, using payment card No. ▮▮▮▮▮▮▮? Had he / she lost the payment card? If yes, please determine when and under what circumstances was it lost. What sum of money was illegally taken from the account of his / her payment card? Did the bank repay that sum of the money?

5. Was the money transferred from the aforementioned account No. ▮▮▮▮▮▮▮ to company "Senamiesčio muzikos svetainė", located at Šv. Mikalojaus Str. 15, Vilnius on the basis of the settlement transaction, carried out on the 21st of November 2004?

6. Was the money transferred from the aforementioned account No. ▮▮▮▮▮▮▮ to company "EMSI" gas station, located at Kareivių Str. 4, Vilnius on the basis of the settlement transaction, carried out on the 24th of November 2004?

7. Was the money transferred from the aforementioned account No. ▮▮▮▮▮▮▮ to pizzeria "Da Antonio", located at Pilies Str. 20, Vilnius on the basis of the settlement transaction, carried out on the 28th of November 2004?

8. Was the money transferred from the aforementioned account No. ▮▮▮▮▮▮▮ to restaurant "Helios", located at Didžioji Str. 28, Vilnius on the basis of the settlement transactions, carried out on the 2nd of December 2004 and 4th of December 2004?

9. Was the money transferred from the aforementioned account No. ▮▮▮▮▮▮▮ to shop "Auksinis Lokys", located at Savanorių Str. 255, Kaunas; shop "Optimalus kompiuteris", located at Savanorių Str. 66, Kaunas; shop "Sarma", located at Savanorių Str. 255, Kaunas; shopping center "IKI", located at Varnių Str. 38A, Kaunas on the basis of the settlement transactions, carried out on the 17th of December 2004?

10. Was the money transferred from the aforementioned account No. ▮▮▮▮▮▮▮ to shop "Kristiana 2", located at Mindaugo Str. 11, Vilnius and shopping center "RIMI Saturnas", located at A.J. Povilaičio Str. 20, Vilnius on the basis of the settlement transactions, carried out on the 18th of December 2004?

11. Was the money transferred from the aforementioned account No. ▮▮▮▮▮▮▮ to company "Katpėdėlė", located at Šeimyniškių

Vilnius on the basis of the settlement transaction, carried out on the 20th of December 2004?

12. Was the money transferred from the aforementioned account No. ▉▉▉▉▉▉▉▉▉▉ to pharmacy "Eurofarmacija", located at Pylimo Str. 53 / Sodų Str. 2, Vilnius; company "Pavilnys", located at Antakalnio Str. 95, Vilnius; company "Gėrimų pasaulis", located at Braškių Str. 2D, Vilnius on the basis of the settlement transactions, carried out on the 21st of December 2004?

13. Was the money transferred from the aforementioned account No. ▉▉▉▉▉▉▉▉▉▉ to company "Pavilnys", located at Naujininkų Str. 3, Vilnius and company "Pavilnys", located at Dzūkų Str. 10A, Vilnius on the basis of the settlement transactions, carried out on the 21st of December 2004?

14. Was the money transferred from the aforementioned account No. ▉▉▉▉▉▉▉▉▉▉ to restaurant "Sinkas", located at Labdarių Str. 8, Vilnius; company "Gėrimų pasaulis", located at Braškių Str. 2D, Vilnius and shop "Ikiukas", located at Vivulskio Str. 15/6, Vilnius on the basis of the settlement transaction, carried out on the 25th of December 2004?

15. Was the money transferred from the aforementioned account No. ▉▉▉▉▉▉▉▉▉▉ to shopping center "T-Market", located at Bazilijonų Str. 3, Vilnius; shopping center "Saulutė", located at Subačiaus Str. 160, Vilnius; shopping center "Ikiukas Užupis", located at Užupio Str. 7, Vilnius; shopping center "Media", Šaltkalvių Str. 2, Vilnius; shopping center "Iki", located at Jogailos Str. 12, Vilnius; shopping center "Iki", located at Jasinskio Str. 16, Vilnius on the basis of the settlement transactions, carried out on the 26th of December 2004?

16. Did the owner of the account No. ▉▉▉▉▉▉▉▉▉▉ protest the aforementioned transactions? Was the sum, charged from the account, compensated to him /her?

17. Did the bank "Bank One, Delaware, National Association, Credit Signature" suffer property damage because of the charge of money from the aforementioned account during the period of time from the 21st of November 2004 until the 27th of December 2004? What is the total sum of the caused property damage?

18. Will the bank bring the civil action in the criminal case No. ▉▉▉▉▉▉▉▉▉▉? If the answer is yes, please present the document, stating the sum of the property damage and an appointed person, who would represent interests of the bank and who would uphold a civil action in the criminal case, and to inform about the wish to be present during the court hearing and to uphold a civil action in the trial. The document must be signed by the responsible managers of the bank and stamped with the official stamp of the bank.

Respectfully,

Chief                         /signature/              Andrejus Lapickas



O. Jermaliuk, +370 5 271 8146